ROANE, Judge.
After stating the case, proceeded as follows?
The first question which occurs in this case is, whether the plea is good in itself? And, if not, then, secondly, whether it is cured by the verdict, under the statute of Amendment and Jeofails?
As to the first question; the general issue, in trespass, is, not guilty? which denies the trespass, stated in the de claration; and imposes on the plaintiff the necessity of proving it; at the same time that it gives him an opportunity of knowing to what point to apply his evidence. On the contrary, a plea of justification, admits the taking, but sets up a new ground, shewing it to be justifiable.
On general principles, it is as necessary that the plaintiff” should be informed, by the plea, of the particular justification set up, in order that he may know how to rebut it, as it is that the defendant should be informed, by the declaration, of the particular trespass alledged, in order that he may deny, or justify it. The principal end of pleading is frustrated, whensoever the one or the other is so general as not to shew the adverse party the particular ground which is relied on.
These general principles are fully supported by authority. For, the hooks uniformly prove, that, if a defendant has a special justification, he must plead it. 1 Esp. N. P. [410, 3 Lond. ed.] Nor do I recollect to have any where seen a justification like the present.
The question, then, is, how does this illegal plea stand upon the statute of Jeofails? The words of the act are indeed very large, as a verdict, under it, goes to cure mispleading, insufficient pleading, discontinuance, misjoining of issue, &c. [C. 76, § 26, R. C. ed. 1803.*]
But, even upon the text of the statute itself, these extensive words mispleading and insufficient, might, perhaps, be deemed to be restrained to defects, which do not go to thesis# of the action or plea, by being coupled with *322 discontinuance, misjoining of issue, lack of warrant of at» torney, &c.; which are mere secondary and inferior defects, and, wisely, not permitted to prevail after verdict.
This, however, is on the' mere text of the act; but, on the reason and design of it, shall a construction be given, which will frustrate the end of all pleadings, and authorise a judgment, when it does not appear to the Court that a judgment ought to be rendered ?
It has often been decided here, that a verdict did not cure a declaration, which omitted to set out the gist of the action. The same principle will extend to the case of a plea, which does not set out the gist of the defence. In both cases, a degree of particularity and certainty is necessary, not only that the adverse party may know precisely what to answer, (the end and object of special pleading,) but that the Court may not pass judgment in a case, which does not appear to them to warrant it: And that they may not, as for example, in the case before us, discharge a defendant, on a plea of justification, unless there appears a good justification, in point of law.
These principles have had the sanction of this Court, in the cases of Winston v. Francisco, 1 Wash. 187; Chichester v Vass, 1 Call, 83; and Baird v. Mattox, 1 Call, 257. To the course of reasoning, in which cases, I beg leave to refer, by way of explaining the ground of my present opinion, and to save time.
The Court, therefore, ought to have awarded a repleader, the plea in question being so substantially defective, that a final judgment thereupon ought not to have been given for the defendant.
But, another point was made by the plaintiff, and determined against him, as appears by the bill of exceptions, relative to the competency of a witness, which point is necessary to be now decided; since, if the Court erred therein, a direction should be given to reject the witness, on a future trial.
It is necessary to consider in what sense the word “ established” is used in the bill of exceptions,' as relative to the corner tree in question. If the effect of the witness’s testimony would be, so to establish it, as to shut up .the point, in all future enquiries on the subject; so to establish it, as that the verdict could hereafter be given in evidence, in favor of the witness, or his representatives; then, clearly, he was an interested witness, and ought to have been rejected: but, if the word only purported an establishment *323 of this fact, as between the then parties and in that suit, then I think a contrary conclusion will follow.
The last is the only sense- in which the word could be understood, without infringing the plainest principles of law. And we must suppose the witness so understood it, as the contrary does not appear. If it did, I will not say how far his testimony might be impeached, in consequence of his thinking himself really interested, when in fact he was not. *
That the word must be understood in the last sense, seems clearly to follow from these considerations: That a verdict can never be given in evidence, but between those who are parties, or privies to it. Bull. N. P. 233. If the present witness should ever have a controversy, concerning his land, involving the line tree in question, it would most probably not be with the plaintiff, or his representatives. It is not stated, that in that case, the controversy would be with them; and we cannot infer it. If so, the opposite party, in that future action, would be an utter stranger to the fact, put in question on the former trial. It would, in the language of Butter, be, as to him, res nova; and he would be bound by a decision, which neither he, nor those under whom he claims, had the liberty to controvert; than which, says the same writer, nothing can be more contrary to natural justice.
I assume it, then, as a clear and incontrovertible position, that this verdict could never be used in favor of the witness, especially in a contest with those who are strangers to the present plaintiff. And if so, how does the case stand with reference to the most approved decisions? In questions concerning the bounds of evidences, there is a considerable degree of contrariety and contradiction. I have examined many cases, ancient and modern, and I infer, that the modern doctrines entirely sustain my present opinion; and that few, if any, of the ancient cases conflict with it, when we go into the reasons on which such decisions are founded.
The case of Bent v. Baker et al. 3 T. R. 27, is very full, and the most modern which I have seen upon the subject, and I entirely concur with the opinion of the Judges therein; especially, those of Lord Kenyon and Mr. Justice Buleer. The former Judge has fortified his opinion, with the high authority of Lord Mansfield and Lord Hard *324 wicke, in the several cases of Walton v. Shelley, [1.T. R. 296,] and The King v. Bray, [Cas. Temp. Hard. 343,] particularly referring those, to whom my opinion is addressed, to the case of Bent v. Baker, throughout. I beg to select such passages and doctrines therefrom, as are decisive with me, in the present case; without, now, specifying, individually, from which of those eminent Judges the doctrines have fallen. I omit this, as being unnecessary, and for the sake of brevity. It is there stated, That, many of the old cases, on the subject of competency, have gone on very subtile grounds; but that, of late years, the Courts have endeavored to let the objection go to the credit, rather than to the competency:* That, whenever there are no positive rules of law to the contrary, it is better to receive the evidence, making, nevertheless, such observations on the credit of the party, as his situation requires: That, respect on this subject is to be paid to the question put on a Voir dire; namely, whether he is really interested in the event of the cause ? which question involves all particular questions “of how interested, &c.,” and amounts to this, whether the record in that cause will affect his interest? That, upon the ground of such record being admissible only, has the case of commoners turned, they being incompetent witnesses when such record can be used, but otherwise not. That, where the proceedings in the cause cannot be used for the witness, he is competent, whatever wishes he may entertain on the subject; which, however, may properly go to his credit: That, on general grounds, in the case of underwriters, (which is very similar to this,) there is no objection to one of them being examined for another, who has subscribed the same policy, notwithstanding a former case, Ridout v. Johnston, [Bull. N. P. 283, 1st ed. omitted in the 2nd,] which may have been determined on its own particular circumstances: That the true line is taken to be, whether the witness is to gain or lose by the event of the cause ? Which depends on th8 question, (if the witness is not directly interested in that very cause,) whether the verdict could be used for, or against him, in a future suit ? And Judge Grose says, in » the same case, that it is better to narrow the objection to those cases, in which the witness is interested in the event of the cause, unless in those exceptions which have been established by solemn decisions.
*325 Fortified by such reasoning and such authorities, which entirely accord with my own inferences from the just theory of evidence, I need not go into a particular analysis of some old eases, which may, on a slight view, appear to conflict with my present opinion. I am,free to declare, however, that, on an attentive consideration of many of them, there are very few, if any, which do not appear clearly distinguishable from the present case; and particularly in that point, which respects the admissibility of the verdict on a future trial.
There is one possible point of view occurring to me, in which the witness in question, or his representatives, might be benefitted by the testimony given in the present cause: Which is this, that in questions concerning boundaries, at a great distance of time, traditionary evidence might perhaps be allowed concerning line trees; and this tradition might, possibly, in part, have arisen from the verdict found on the testimony of a person, who, or whose representatives, may be parties to the future suit. This I admit is a possible case, but it is so remote, contingent and uncertain, as not to form an exception, from the doctrine just stated.
In Bull. N. P. 284, it is laid down; “That an interest is said to be, where there is a certain benefit attending the determination of the cause'one way;” and again, “ that it must be a present interest, for a future and contingent interest will not prevent a person from being a witness.”
These passages seem fully to justify my conclusion, as to the witness in question; and I think the District Court did right, in permitting him to be sworn in the cause.
In Meade v. Tate, [ante, 231,] in this Court, the judgment of the District Court was reversed, and that of the County Court, admitting the competency of a witness similarly situated, was affirmed; and upon the whole, I am of opinion, that the witness in the present ease, was competent; but that a repleader should be awarded, on ac= count of the defective pleadings.
FLEMING-, Judge. The pleadings in this case are clearly too loose and indefinite. For, the plea of the defendant only consists of the word justification^ and to this, the plaintiff replies generally: Upon which, the parties went to trial without any particular fact being alledged on either side, on which an issue could be joined. Of course, I am warranted in saying, that there was no issue joined; *326 and, therefore, that the judgment, upon that ground, ought' to be reversed, and a repleader awarded.
I was at first inclined to think, that the objection to the witness went to his credit, and not to his competency; but, upon reflecting on his own declarations, and his situation with respect to the controversy before the Court, I am decidedly of opinion that he ought not to have been admitted. The reason why an interested witness is not admissible is, that' there is a presumption that his interest would produce an improper bias on his mind; and, therefore, the law rejects him altogether. The slightest interest is sufficient for this purpose. Hence, one commoner cannot be a witness to prove a right in an action brought by another. For, the right being entire, he comes to support his own title. So, where lands lay in two parishes, the parson of one was not received as a witness, because he might enlarge his own parish, and consequently the tythes. 2 Bac. Abr. 590, [Gwil. ed.;] [Wharton v. Robinson,] 7 Mod. 63. Again, a person who had acted in breach of an alledged custom, was not held a competent witness, to disprove the existence of the custom, because, if the custom should not be established, he would be discharged from an action on account of the breach. [The Co. of Carpenters et al. v. Hayward,] Dougl. 374. The principle of which cases seems to me to apply, expressly, to that under consideration. For, in neither of them was the interest of the witness more immediate than in the present case. He was only to be eventually affected, and that was the ease here. The question was, whether No.' 1, or No. 7, in the survey, was the true corner of Beverley Manor; and the witness appears to have been materially interested in that question. For, by his own confession, if No. 1, is the true corner, he saves part of his land; but otherwise, if No. 7, be the corner. In this situation, the presumption of bias is so strong, that it is sufficient, in my opinion, to repel him; especially, as his testimony went to prove that No. 1, was the true corner; the very fact, which he was interested in having established. I think, therefore, that he was incompetent, and ought to have been rejected.
CARRINGTON, Judge. There can be no doubt but that there must be a repleader. For, the plea is unquestionably bad, and not cured by the statute, which was never meant to be extended to a case like this, where there is nothing certain or issuable in the pleadings.
*327 But, as to the point relative to the admissibility of the witness, I am equally clear that he ought to have been received. For, his interest cannot be affected by this suit; inasmuch as the verdict and judgment in this case cannot he given in evidence for or against him in a future action. I am, therefore, of opinion, that he was admissible; and, that the objection was a matter of observation only, which went to his credit, and'not to his competency.
LYONS, Judge. We all concur, in opinion, that the plea is bad, and that a repleader must be awarded.
But, I differ with those who think that it was right to receive the witness. For, he and the defendant claimed the same boundaries, and both are interested in establishing the corner tree at No. 1. That no man can be a witness in his own cause, is a rule of universal justice; and it is also laid down, that no person interested in the question before a Court, can be a witness. Nay, more, if a witness only apprehends himself to be interested, although in fact he be not, yet he is not admissible. [Fotheringham v. Greenwood,] 1 Stra. 129. * Now, here, the defendant and the witness, both claiming the same corner, they have equal interest in establishing the same fact. Therefore, although the witness is not subject to the costs and damages in that suit, yet his title and boundaries are drawn into question; and the verdict and judgment in this case, will, as Lord Holt observes in Salk. 283, be sure to be heard of, and may have an influence on the jury, in any suit which may be brought against him. I am, therefore, of opinion, that he was not a competent witness; but, as the Court are divided upon this point, no direction, with regard to it, can he given. The judgment, however, is to be reversed for want of an issue, and a repleader awarded.
Judgment reversed and a repleader awarded. †

[* Sea act Feb. S3,1819, c. 128, § 103, R. C, ed. 1819.]

[*See Richardson's ex'r. v. Hunt, 3 Munf. 148]

[* See Harvey et al. v. Alexander et al. 1 Rand, 235; Evans v. Eaton, 7 Wheat. 356.]

[* See Richardson’s ex’r. v. Hunt, 2 Munf. 148; Baring v. Reeder, 1 H. & M. 154; Richardson v. Carey et al. 2 Rand. 87.]

[† Kirtley v. Deck, 3H. & M. 388; Stevens v. Taliaferro, adm’r, 1 Wash. 155; Hite’s heirs et al. v. Wilson et al. 2 H. & M. 268; Wilkinson’s adm'rs. v. Bennett, 3 Munf. 314, Totty’s ex’r. v. Donald & Co. 4 Munf, 430.]